IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| ROBERT KRAKAT and <br> DONALD KRAKAT, <br><br>                 Plaintiffs, <br><br> v. <br><br> BROOKS RANGE CONTRACT SERVICES, INC., <br><br>                 Defendant. | ) <br> ) <br> ) <br> ) <br> ) <br> ) Case No:  1:07-cv-00693-RCL <br> ) <br> ) <br> ) <br> ) |

**DEFENDANT BROOKS RANGE CONTRACT SERVICES, INC.'S
MOTION TO DISMISS COMPLAINT**

     COMES NOW, Defendant Brooks Range Contract Services, Inc. ("BRCS"), pursuant to Federal Rule of Civil Procedure 12(b)(6), and respectfully moves this Court to dismiss the Complaint, with prejudice, filed by Plaintiffs Robert Krakat and Donald Krakat for failure to state a claim upon which relief can be granted.

                             **BROOKS RANGE CONTRACT SERVICES, INC.**

                             By: ___/s/ Karen A. Doner_____
                                       Counsel

Karen A. Doner (Bar #458626)
Thomas J. McKee, Jr. (admission pending)
Williams Mullen, P.C.
8270 Greensboro Drive, Suite 700
McLean, Virginia 22102
703-760-5200 (phone)
703-748-0244 (fax)

-2-

**<u>CERTIFICATE OF SERVICE</u>**

I hereby acknowledge that on this  27   day of April, 2007, a copy of the foregoing Brooks Range Contract Services, Inc.'s Motion to Dismiss, was served via e-filing upon:

>Timothy P. Leahy
>14300 Gallant Fox Lane, Suite 120
>Bowie, Maryland 20715
>*Counsel for Plaintiffs*

>       /s/ Karen A. Doner_____
>Karen A. Doner

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| ROBERT KRAKAT and )<br>DONALD KRAKAT, )<br> )<br>Plaintiffs, )<br> )<br>v. )<br> )<br>BROOKS RANGE CONTRACT SERVICES, INC., )<br> )<br>Defendant. ) | Case No: 1:07-cv-00693-RCL |

**DEFENDANT BROOKS RANGE CONTRACT SERVICES, INC.'S
MEMORANDUM IN SUPPORT OF ITS MOTION TO DISMISS COMPLAINT**

Defendant Brooks Range Contract Services, Inc. ("BRCS"), pursuant to Federal Rule of Civil Procedure 12(b)(6), submits this Memorandum in Support of its Motion to Dismiss the Complaint filed by Plaintiffs Robert Krakat and Donald Krakat (collectively, "Plaintiffs"), and states as follows:

**INTRODUCTION**

Plaintiffs filed a Complaint against BRCS, in which they allege that they were wrongfully terminated, in violation of public policy, from their employment at BRCS, and that BRCS defamed Plaintiffs by making allegations of theft, poor performance, and excessive absenteeism. However, even assuming that all of the facts Plaintiffs have pled are true, all of their claims are defective and should be dismissed. Specifically:

1.    Counts I and III for Wrongful Termination fail to state a claim upon which the Court can grant relief because the Complaint does not cite the statutes that were allegedly violated when Plaintiffs were terminated; and

    2.    Counts II and IV for Defamation fail to state a claim upon which the Court can grant relief because the Complaint does not allege defamation with the requisite particularity and specificity.

## STANDARD OF REVIEW

A claim should be dismissed under Fed. R. Civ. P. 12(b)(6) if it appears that the plaintiff can prove no facts in support of his claims which would entitle him to relief. Conley v. Gibson, 355 U.S. 41, 45-46 (1957). Further, in deciding such a motion, the Court can only rely upon the allegations in the complaint and those documents attached as exhibits or incorporated by reference. Gustave-Schmidt v. Chao, 226 F.Supp.2d 191, 196 (D.D.C. 2002). Although the Court accepts the factual allegations in the complaint and must construe them in the light most favorable to plaintiff, the Court is not required to accept conclusory allegations. See Papsan v. Allain, 478 U.S. 265, 286 (1986).

## ALLEGATIONS IN THE COMPLAINT

In 2005, Brooks Range Contract Services, Inc., contracted with the Federal Government to maintain the Armed Forces' Retirement Home (the "Home") in the District of Columbia. Complaint ¶¶ 1, 4. Shortly thereafter, BRCS hired Robert Krakat and Donald Krakat to provide maintenance, among other services, at the Home.[1] Complaint ¶¶ 4, 5. During their employment with BRCS, Plaintiffs were supervised by Kevin Heffern ("Heffern"), the BRCS Project Manager for the Home. Complaint ¶ 6. Plaintiffs do not allege that they had any employment agreement with BRCS.

---

[1] Plaintiffs allege that Robert Krakat began working at the Home in 1973 pursuant to an employment contract with the entity then-charged with maintaining the Home (not BRCS). Complaint ¶ 3.

Plaintiffs allege that in 2005, Heffern engaged in improper invoicing to the government. Complaint ¶ 7. They allege that during their employ, Heffern's assistant, Katie Farver, informed Plaintiffs of her concern regarding her participation in the preparation of allegedly fraudulent invoices. Complaint ¶ 7. Specifically, Plaintiffs allege that Heffern: (1) overcharged the Federal Government over $500 for each air conditioning unit that cost BRCS $200 when BRCS was only entitled to a 12% mark-up. Complaint ¶ 8; (2) overcharged the Federal Government for work not performed relating to a 2005 Christmas Party. Complaint ¶ 9; (3) overcharged the Federal Government for cement cleanup. Complaint ¶ 10; (4) allowed Virginia Contracting Services, a company owned by Heffern, to charge BRCS for work that Donald Krakat and other BRCS employees performed during normal business hours. Complaint ¶ 11; and (5) disregarding lower bids for tree services in order to hire a company owned by a friend of Heffern. Complaint ¶ 12. Plaintiffs do not allege that they were asked to participate in any of the above alleged wrongdoing.

In or around November 2005, Robert Krakat alleges that he spoke to "officials of the Home" and to Thomas Starr, Assistant Facilities Director for BRCS, regarding the "alleged problems with the work and invoicing of Heffern." Complaint ¶ 14. On February 17, 2006, Robert Krakat allegedly spoke to others, including the Contracting Officer Representative for the Home, David Rouse, about the alleged problems, and allegedly gave Mr. Rouse documentation regarding Heffern's alleged improper practices. Complaint ¶ 16.

Plaintiffs allege in the Complaint that they were terminated from employment with BRCS on February 23, 2006 "on grounds of" theft. Complaint ¶ 18. According to Plaintiffs, the allegation of theft as a basis for the terminations was subsequently withdrawn by BRCS and BRCS instead alleged that the reason for their terminations was "poor performance by Robert Krakat and poor performance & excessive absenteeism by Donald Krakat." Complaint ¶ 21.

However, Plaintiffs allege that the real reason they were terminated was because of their "refusal to knowingly participate in the alleged fraudulent activity undertaken by the Defendant." Complaint ¶¶ 31, 42. Plaintiffs further allege that "[p]articipation in the alleged fraudulent activity would have caused [Plaintiffs] to transgress statutes in violation of public policy." Complaint ¶¶ 32, 43. Plaintiffs also allege that they were terminated "in retaliation for [plaintiffs'] reporting the alleged fraudulent activity to the Home which is a violation of public policy as well as Federal and District statutes protecting whistleblowers." Complaint ¶¶ 33, 44.

Plaintiffs also allege that BRCS made defamatory statements about Plaintiffs' theft, poor performance, and absenteeism to "employees of BRCS and the Home". Complaint ¶¶ 35, 36, 47, and 48. Other than Katie Farver, a BRCS employee who "witnessed" the allegation of theft, no other employees are identified as the recipients of the alleged defamatory statements. Complaint ¶ 19.

Plaintiffs filed their Complaint in the Superior Court of the District of Columbia on January 26, 2007. The Complaint alleges counts of Wrongful Termination in Violation of Public Policy and Defamation with respect to each Plaintiff. On April 16, 2007, Defendants removed the case to the United States District Court for the District of Columbia. For the reasons set forth below, BRCS moves to dismiss the Complaint for failure to state a claim.

## ARGUMENT

I. **PLAINTIFFS' CLAIMS FOR WRONGFUL TERMINATION IN VIOLATION OF PUBLIC POLICY SHOULD BE DISMISSED**

    A. **"At-Will" Employees in the District of Columbia May Not Bring Wrongful Termination Claims Unless the Termination Qualifies for the Narrow Exception of a Violation of Public Policy.**

In the District of Columbia, persons who are employed "at-will" may be discharged "at any time and for any reason, or for no reason at all." Adams v. Cochran & Co., 597 A.2d 28, 30

(D.C. Cir. 1991). Consequently, D.C. law "presumptively bars wrongful termination claims brought by at-will employees." Holman v. Williams, 436 F.Supp. 2d 68, 76 (D.C. 2006).

In recent years, however, the District of Columbia courts have recognized a narrow public policy exception to this general rule when the plaintiff demonstrates that "the sole reason for [the employee's] discharge is the employee's refusal to violate [a] law, as expressed in a statute or a municipal regulation." Adams, 597 A.2d at 34. The plaintiff in Adams was a truck driver who was terminated after refusing to drive a delivery truck that lacked a required inspection sticker. To operate the vehicle would have been a violation of 18 DCMR § 602.4. The Court acknowledged the public policy exception, reasoning that "Adams was forced to choose between violating the regulation and keeping his job – the very choice which . . . he should not have been required to make." Id. Thus, to qualify under Adams as an exception to the at-will employment doctrine, there must be an "outright refusal to violate a specific law." Riggs v. Home Builders Institute, et al., 203 F.Supp.2d 1, 11 (D.C. 2002).

In Carl v. Children's Hospital, 702 A.2d 159 (D.C. 1997) (en banc), the court somewhat expanded this exception to include the exercise of a statutory right. In that case, a nurse was terminated after she had advocated for patients' rights and against her employer's interests before the Council of the District of Columbia and as an expert witness in Court. She alleged that her termination violated D.C. Code § 1-224 (1992), which prohibited any effort to impede a witness in any proceeding before the D.C. Council. The plurality of the court in Carl concluded that this particular circumstance qualified for the public-policy exception, and that any such exception must be "solidly based on a statute or regulation that reflects the particular public policy to be applied . . . ." Id. 702 A.2d at 163. See also, Liberatore v. Melville Corp., 168 F.3d 1326, 1311 (D.C. Cir. 1999).

Carl, however, is not a blank check to permit further exceptions to the at-will doctrine. Instead, "[f]uture requests to recognize such exceptions [to the at-will doctrine] . . . should be addressed only on a *case-by-case* basis." Riggs v. Home Builders Institute, 203 F.Supp.2d 1, 7 (D.D.C. 2002) (emphasis added). Any such exceptions must reflect a "clear mandate of public policy – i.e., those that make a clear showing, based on some *identifiable policy* that has been 'officially declared' in a statute or municipal regulation, or in the Constitution, that a new exception is needed." Id. (emphasis added).

Although the plaintiffs in the foregoing cases all cited statutes in their complaints, as discussed in Riggs, this Court's opinion in Macintosh v. Building Owners and Managers Association International, 255 F.Supp.2d 223 (D.D.C. 2005), seems to imply this is not necessary. The Macintosh Court recognized that although "the plaintiffs in the exceptions recognized by the D.C. Court of Appeals all cited particular statutes and regulations in their complaints," a plaintiff did not need to cite the statute or regulation that "he believes embodies a clear mandate of public policy in his complaint." Id. at 228-29. Macintosh, however, involved an express instruction to violate the law and an express refusal to violate the law. In such circumstances, the law at issue is clear, and the Court can easily see the requisite "close fit between the policy thus declared and the conduct at issue in the allegedly wrongful termination." Riggs, 203 F.Supp.2d at 7. Absent such an express instruction to violate the law, and absent such a clear connection to the law at issue, a specific cite to a statute appears to be required by the Court. The analysis is not uniform, as it must be conducted on a case-by-case basis. Id.

  **B.** **Counts I and III for Wrongful Termination in Violation of Public Policy Should be Dismissed.**

    **1.** **Plaintiffs were At-Will Employees**

Plaintiffs were at-will employees of BRCS, and Plaintiffs have made no claims to the contrary.  Instead, Robert Krakat merely alleges that he only had an employment contract in 1973, when he was first hired by his previous employer (not BRCS).  Complaint ¶ 3.  The Complaint further alleges that both Defendants were hired by BRCS in 2005.  Id. at ¶¶ 4-5.  Because no contract existed with BRCS, Plaintiffs were at-will employees.  BRCS's Motion to Dismiss should therefore be granted because claims for wrongful termination by at-will employees are essentially barred in the District of Columbia.  See Holman v. Williams, 436 F.Supp. 2d 68, 76 (D.C. 2006).

### 2.    Plaintiffs Do Not Qualify for a Public Policy Exception and Fail to Cite to a Statute.

Plaintiffs fail to state a claim for wrongful termination under Adams because they have made no allegation that they were expressly directed to violate the law, nor that they expressly refused to perform an illegal act.  In fact, the Complaint is devoid of any factual allegations that could support any inference that Plaintiffs were part of the alleged improper billing or other acts.  Instead, Plaintiffs only allege being aware of such conduct and informing BRCS personnel.  The Complaint only conclusorily alleges that termination occurred after Plaintiffs' "refusal to knowingly participate in the alleged fraudulent activity".  Complaint ¶¶ 31, 42.  Plaintiffs, however, never alleged being asked to participate.  Nor do their factual allegations set forth anything from which such a request or subsequent refusal could be inferred.  Complaint ¶¶ 31, 42.  Instead, the allegations make it clear that Defendants were not asked to participate; the alleged wrongdoing was merely reported by Robert Krakat.  As a result, the Complaint fails to state a claim under Adams.

Plaintiffs' also fail to state a claim under Carl, or the expansion of the public policy exception it represents, because Plaintiffs fail to cite to the statute which sets forth the public

policy allegedly violated. Because Plaintiffs do not allege that they were expressly (or even impliedly) directed to violate the law, nor that they refused any such direction, <u>Macintosh</u>'s "excuse" for not citing a statute in the Complaint is inapplicable. Instead, as noted in <u>Riggs</u>, there must be "some *identifiable policy* that has been 'officially declared' in a statute or municipal regulation . . . ." <u>Riggs</u>, 203 F.Supp.2d at 7. Thus, Plaintiffs must identify the statute. The mere implication of a policy does not automatically qualify Plaintiffs for the "public policy" exception to the District's at-will employment doctrine. Plaintiffs have failed to identify the particular statute violated when they were terminated. The mere reference to "Federal and District statutes protecting whistleblowers" is insufficient. As a result, Plaintiffs' Complaint should be dismissed for failure to cite to the statutes on which they base their claim of a public policy violation.

## II.   **PLAINTIFFS' CLAIMS FOR DEFAMATION SHOULD BE DISMISSED**

### A.   **Defamation Requires Specificity**

Under District of Columbia Law, a cause of action for defamation requires a plaintiff to prove four elements. <u>See</u> <u>Crowley v. North Am. Telecomms. Ass'n</u>, 691 A.2d 1169, 1173 n.2 (D.C. 1997). First, the plaintiff must prove that the defendant "made a false and defamatory statement concerning the plaintiff." <u>Id.</u> Second, that the defendant "published the statement without privilege to a third party." <u>Id.</u> Third, that the defendant's "fault in publishing the statement amounted to at least negligence." <u>Id.</u> And fourth, the plaintiff must prove either that the statement was "actionable as a matter of law irrespective of special harm or that its publication caused the plaintiff special harm." <u>Id.</u>

Pleading a claim of defamation in this Court requires a "heightened" standard of pleading. <u>See</u> <u>Wiggins v. Philip Morris, Inc.</u>, 853 F.Supp. 458, 465 (D.D.C. 1994). <u>Wiggins</u> states that "[a]ll averments of defamation must be plead with particularity. <u>Id.</u> (relying on <u>Asay</u>

v. Hallmark Cards, Inc., 594 F.2d 692, 699 (8th Cir. 1979), which held that "[t]he use of *in hac verba* pleadings on defamation charges is favored in the federal courts because generally knowledge of the exact language used is necessary to form responsive pleadings."); see also Black v. National Football League Players Ass'n, 87 F.Supp. 2d 1, 6 (D.D.C. 2000). "Conclusory allegations are insufficient to state a claim." Wiggins, 853 F.Supp. at 465. Instead, "[a] plaintiff should plead the time, place, content, speaker, and listener of the alleged defamatory matter." Id.; see also Charles A Wright & Arthur R. Miller, *Federal Practice and Procedure* § 1309 (1990) ("In libel and slander suits, the time and place of the publication should be specifically stated in the complaint.").

  **B. Counts II and IV Should Be Dismissed as they Fail to Plead a Cause of Action with the Requisite Specificity**

  Plaintiffs fail to allege the four elements of defamation with the specificity required under Wiggins. This failure severely hinders BRCS's ability to draft a proper responsive pleading and prepare a defense.

  Plaintiffs offer nothing more than vague and conclusory allegations. As previously noted, Plaintiffs' allegations should be specific as to the time, place, content, speaker, and listener of the alleged defamatory statements. The Complaint is lacking such specificity. For example, Plaintiffs both allege in the Complaint that BRCS accused Plaintiffs of theft, poor performance, and excessive absenteeism, and that such statements were published to "employees of BRCS and the Home . . . ." Complaint ¶¶ 36, 47. The closest Plaintiffs come to providing any sort of detail of the defamatory allegations is in paragraph 19 of the Complaint, which states that "'*Heffern and BRCS's*' February 23, 2005 allegations that the termination was for theft alleged by the Home was *witnessed* by Katie Farver who attended the meeting at which the Krakats were fired." (emphasis added). Similarly, in paragraph 17 of the Complaint, Plaintiffs

-9-

allege that "the Krakats were suspended by BRCS pending an investigation into theft alleged by *Heffern and BRCS*." (emphasis added).

Plaintiffs' allegations regarding defamation are simply insufficient. BRCS is entitled to know the actual alleged statement. Similarly, and perhaps of greater importance, the Complaint fails to delineate between statements of Heffern and any other BRCS employees. Instead, every allegation of a defamatory statement merely states "Heffern and BRCS." As a corporation, BRCS can only act through its employees, and thus BRCS is entitled to know which employees Plaintiffs allege made such statements. Other than Ms. Farver, Plaintiffs also fail to identify the recipient of the alleged statements. Again, as publishing a defamatory statement to a third party is an element of defamation, BRCS must know to whom such statements were made. Merely stating that such statements were made "to employees of BRCS and the Home" is fatal to the Complaint.

## **CONCLUSION**

For the foregoing reasons, Brooks Range Contract Services, Inc., respectfully requests that the Court dismiss Plaintiffs' Complaint, and for such other and further relief that the Court deems appropriate.

                                           BROOKS RANGE CONTRACT SERVICES, INC.

                                           By:    /s/ Karen A. Doner.
                                           Karen A. Doner (Bar #458626)
                                           Thomas J. McKee, Jr. (admission pending)
                                           Williams Mullen, P.C.
                                           8270 Greensboro Drive, Suite 700
                                           McLean, Virginia 22102
                                           703-760-5200
                                           703-748-0244 (fax)

## CERTIFICATE OF SERVICE

I hereby acknowledge that on this 27th day of April, 2007, a copy of the foregoing Brooks Range Contract Services, Inc.'s Memorandum in Support of its Motion to Dismiss, was served via e-filing upon:

>
> Timothy P. Leahy
> 14300 Gallant Fox Lane, Suite 120
> Bowie, Maryland 20715
> Counsel for Plaintiffs

                                                _____/s/ Karen A. Doner_____
                                                Karen A. Doner

1440741v3

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| ROBERT KRAKAT and <br> DONALD KRAKAT, <br><br> Plaintiffs, <br><br> v. <br><br> BROOKS RANGE CONTRACT SERVICES, INC., <br><br> Defendant. | ) <br> ) <br> ) <br> ) <br> ) <br> ) Case No:  1:07-cv-00693-RCL <br> ) <br> ) <br> ) <br> ) |

## **ORDER**

UPON CONSIDERATION of Defendant Brooks Range Contract Services, Inc.'s ("BRCS") Motion to Dismiss the Complaint, and any opposition thereto, it is hereby

ORDERED that BRCS's Motion to Dismiss the Complaint is GRANTED, and that the Complaint is hereby DISMISSED WITH PREJUDICE.

Entered this \_\_\_ day of _____, 2007.

_____
Judge, United States District Court

1445004v1