IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| ROBERT KRAKAT and<br>DONALD KRAKAT,<br><br>    Plaintiffs,<br><br>v.<br><br>BROOKS RANGE CONTRACT SERVICES, INC.,<br><br>    Defendant. | )<br>)<br>)<br>)<br>)<br>)  Case No: 1:07-cv-00693-RCL<br>)<br>)<br>)<br>) |

## MOTION FOR PROTECTIVE ORDER AND FOR SANCTIONS

COMES NOW Defendant Brooks Range Contract Services, Inc. ("Defendant" or "BRCS"), by counsel, and respectfully requests this Court impose a Protective Order prohibiting Plaintiffs from contacting third-party witnesses absent their counsel, and impose sanctions against Plaintiff Robert Krakat ("Mr. Krakat") for abusive litigation practices undertaken in bad faith. Defendant has filed the accompanying Memorandum in Support of this Motion.

             Respectfully submitted,

             _____/s/_____
             Karen A. Doner (#458626)
             Thomas J. McKee, Jr. (#492482)
             WILLIAMS MULLEN, P.C.
             8270 Greensboro Drive, Suite 700
             McLean, Virginia  22102
             (703) 760-5238
             (703) 748-0244 (fax)
             Counsel for Defendant

2

**<u>CERTIFICATE OF SERVICE</u>**

  I HEREBY CERTIFY that on this 13th day of December 2007, a true copy of the foregoing document was sent via electronic filing, to:

    Timothy P. Leahy, Esq.
    14300 Gallant Fox Lane, Suite 120
    Bowie, Maryland 20715
    Counsel for Plaintiffs

            _____/s/_____
            Karen A. Doner

1542202v1

2

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| ROBERT KRAKAT and <br> DONALD KRAKAT, <br><br> Plaintiffs, <br><br> v. <br><br> BROOKS RANGE CONTRACT SERVICES, INC., <br><br> Defendant. | ) <br> ) <br> ) <br> ) <br> ) <br> ) Case No: 1:07-cv-00693-RCL <br> ) <br> ) <br> ) <br> ) |

## MEMORANDUM IN SUPPORT OF DEFENDANT'S MOTION FOR PROTECTIVE ORDER AND FOR SANCTIONS

COMES NOW Defendant Brooks Range Contract Services, Inc. ("Defendant" or "BRCS"), by counsel, and respectfully requests this Court impose a Protective Order prohibiting Plaintiffs from contacting third-party witnesses absent their counsel, and impose sanctions against Plaintiff Robert Krakat ("Mr. Krakat") for abusive litigation practices undertaken in bad faith. In support of this motion, Defendant states as follows:

1. On November 29, 2007, Plaintiffs' counsel took the deposition of Kevin Heffern, who is a management employee of BRCS and a key witness in this case. Mr. Krakat was present for Mr. Heffern's deposition and took notes.

2. Mr. Heffern testified at his deposition that several persons reported to him allegations of theft by the Plaintiffs. One of the persons that Mr. Heffern testified about was James Cavanagh, a federal government employee, who reported to Mr. Heffern several incidents of theft by Mr. Krakat. See pages 51-52 of Mr. Heffern's deposition, attached as Exhibit A.

3. On December 10, 2007, Mr. Cavanagh received a harassing telephone call from Mr. Krakat at his place of employment. Mr. Krakat told Mr. Cavanagh that his name was "in there" as telling Mr. Heffern that Mr. Krakat stole meats and linens from the Armed Forces

Retirement Home[1].  See Affidavit of James Cavanagh attached as <u>Exhibit</u> <u>B</u>.  Mr. Krakat further told Mr. Cavanagh that he needs to sign something that Mr. Krakat's attorney will send him saying that Mr. Krakat did not steal anything or he would take him to court.  <u>Id.</u>  According to Mr. Cavanagh, Mr. Krakat's statements to him were in a harassing manner.  <u>Id.</u>  Mr. Cavanagh told Mr. Krakat that he knew that he in fact stole items from the Armed Forces Retirement Home, including televisions, and that he was not going to sign anything stating that Mr. Krakat did not steal.  <u>Id.</u>  Mr. Cavanagh then hung up the telephone.  <u>Id.</u>

    4.     Mr. Krakat's communication with Mr. Cavanagh amounts to witness intimidation and tampering.  Mr. Krakat attempted to influence Mr. Cavanagh's potential testimony by threatening to bring him to Court.  Such intimidation puts Mr. Cavanagh's cooperation in jeopardy and may taint any eventual testimony given by Mr. Cavanagh.

    5.     The instance with Mr. Cavanagh is not the first time Plaintiffs have attempted to intimidate a witness.

    6.     In March 2006, after Plaintiffs were terminated by BRCS, Donald Krakat repeatedly made harassing calls to Mr. Heffern himself.  In these calls, Donald Krakat made a number of threats, including: (i) telling Mr. Heffern that he was at the end of Mr. Heffern's driveway and that he was going to kill Mr. Heffern's dogs, (ii) that Mr. Heffern's days are numbered, and (iii) that Mr. Heffern should watch his back.  <u>See</u> pages 13-15 of Mr. Heffern's deposition, attached as <u>Exhibit C</u>.

    7.     A Court has inherent power to impose sanctions for abusive litigation practices undertaken in bad faith.  <u>See</u> <u>Young v. Office of the United States Sergeant at Arms</u>, 217 F.R.D. 61, 65 (2003) (dismissing plaintiff's claims where she was found to be tampering with witnesses

---

[1] BRCS is responsible for operating the Armed Forces Retirement Home pursuant to a contract between the U.S. Bureau of Public Dept and BRCS.  Previously, the Armed Forces Retirement Home was operated by JHT, Inc., at which Mr. Krakat was employed.  Prior to JHT operating the Home, it was operated by the federal government.  Mr.

by offering bribes or instructing false testimony).  Such powers are to help the Court protect the integrity of the judicial system and prevent abuses of judicial process, and may be used to deter similar conduct in the future.  Id. at 65-66.

8. Mr. Krakat's actions with respect to Mr. Cavanagh demonstrate actions taken in bad faith with an intent to intimidate and influence a witness.

9. Furthermore, Mr. Krakat's attempt to intimidate potential witnesses, especially in light of the prior incident with Mr. Heffern, has prejudiced, and will continue to prejudice, Defendant's ability to have a fair trial on this matter.    Mr. Krakat's actions render third-party witnesses less likely to cooperate, and potentially taints testimony of such witnesses who may be fearful of repercussions they may face for testifying against Plaintiffs.

10. To prevent such further prejudice, and pursuant to the Court's inherent power to protect the judicial process, Defendant requests that this Court enter a Protective Order prohibiting both Robert Krakat and Donald Krakat from contacting any third party relating to this case without the presence of their counsel.

11. To further deter such misconduct, Defendant respectfully requests that this Court sanction Mr. Krakat as this Court may deem appropriate, up to and including a civil penalty and/or dismissal of Mr. Krakat's claim against Defendant.

12. Finally, Defendant has incurred attorneys' fees in connection with this Motion and requests that this Court award Defendant such fees from Mr. Krakat.

13. Counsel for Defendant has conferred with counsel for Plaintiffs regarding this Motion.

WHEREFORE, Defendant respectfully requests this Court to enter a Protective Order prohibiting Plaintiff Robert Krakat and Donald Krakat from contacting any potential third party

---

Krakat was employed by the government at the Home for more than 20 years.  Mr. Cavanagh was also previously

witness in this matter absent their counsel, and that this Court sanction Plaintiff Robert Krakat for witness tampering by imposing a sanction this Court may deem appropriate, up to and including a civil penalty and/or dismissal of Mr. Krakat's claim against Defendant, awarding Defendant its attorneys' fees and costs associated with this Motion, and granting such other and further relief as this Court deems proper.

                                            Respectfully submitted,

                                            _____/s/_____
                                            Karen A. Doner (#458626)
                                            Thomas J. McKee, Jr. (#492482)
                                            WILLIAMS MULLEN, P.C.
                                            8270 Greensboro Drive, Suite 700
                                            McLean, Virginia   22102
                                            (703) 760-5238
                                            (703) 748-0244 (fax)
                                            Counsel for Defendant

**DEFENDANT REQUESTS A HEARING ON THIS MOTION.**

---

employed by the government at the Home and knew Mr. Krakat.

**CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that on this 13th day of December 2007, a true copy of the foregoing document was sent via electronic filing, to:

> Timothy P. Leahy, Esq.
> 14300 Gallant Fox Lane, Suite 120
> Bowie, Maryland 20715
> Counsel for Plaintiffs

_____/s/_____
Karen A. Doner

1542078v1

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

ROBERT KRAKAT, et al.,        )
                              )
         Plaintiffs,          )
                              )
         -vs-                 )  CASE NO. 1:07-cv-00693-
BROOKS RANGE CONTRACT         )
RCL SERVICES, INC.,           )
                              )
         Defendant.           )


                              Thursday, November 29, 2007
                              Bowie, Maryland

Deposition of

         KEVIN MARK HEFFERN, SR.

called for examination by counsel for the

Plaintiff, pursuant to notice, held at the

offices of Byrd & Byrd, LLC, 14300 Gallant Fox

Lane, Suite 120, Bowie, Maryland 20715,

beginning at 10:08 a.m., before Bonnie Marcus

Olachea, a notary public in and for the District

of Columbia, when were present on behalf of the

respective parties:



1  think I understand your answer to be -- your understanding's

2  in the 1980's there was an allegation he had taken meat.

3           BY MR. LEAHY:

4       Q.   And when did you learn about those allegations that

5  Robert Krakat had taken meat?

6       A.   I would say 2005.

7       Q.   So it would be before Robert Krakat was terminated?

8       A.   Yes.

9       Q.   What other allegations are you aware that were made

10 against either Robert Krakat or Donald Krakat of theft?

11      A.   Taking linens out of a laundry room.

12      Q.   Who was alleged to have done that?

13      A.   Bob.

14      Q.   And do you know what year he was alleged to have

15 done that?

16      A.   I don't recall.

17      Q.   You say seventies, eighties, nineties, 2000's?

18           MS. DONER:  Objection.

19           THE WITNESS:  During his tenure as a government

20 employee is all I can say.  I don't recall what year.

21           BY MR. LEAHY:

22      Q.   But prior to Brooks Range?

23      A.   Yes.

24      Q.   How did you learn about the allegations of removal

25 of linens from laundry the room?

1    A.    Government employee.

2    Q.    And who was that?

3    A.    James Cavanaugh.

4    Q.    And how did you learn about the allegations of the
5    meat removal?

6    A.    James Cavanaugh.

7    Q.    And do you have an understanding as to whether
8    there was ever a determination that Robert Krakat did in fact
9    take the meat or did in fact take the linens?

10    A.    Do I know for a fact that there was a
11    determination?

12    Q.    No.  What did James Cavanaugh tell you about these
13    incidents?

14    A.    I don't know what the determination was but there
15    may have been a change in Bob's position, or title, or
16    responsibilities from regular shift to night shift or
17    whatever, something like that.

18    Q.    But do you know whether there was a determination
19    that he did in fact take either the linens or the meat?

20    A.    I don't know that there was a determination, an
21    official determination.

22    Q.    So is it fair to say that what you're aware of is
23    that there were allegations that Robert Krakat may have taken
24    meat or Robert Krakat may have taken linens?

25    A.    Yes.

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| ROBERT KRAKAT and <br> DONALD KRAKAT, <br><br>           Plaintiffs, <br><br> v. <br><br> BROOKS RANGE CONTRACT SERVICES, INC., <br><br>           Defendant. | ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) Case No: 1:07-cv-00693-RCL <br> ) <br> ) <br> ) <br> ) |

## AFFIDAVIT

I, James Cavanagh, being duly sworn under oath do hereby state as follows:

1.     I am over the age of 18 and am competent to testify in this matter.

2.     I am employed by the federal government at the Armed Forces Retirement Home in the District of Columbia.

3.     I have known Robert Krakat, Sr. for over 20 years.

4.     On December 10, 2007, I received a telephone call from Mr. Krakat at my place of employment. Mr. Krakat said that my name is "in there" as telling Kevin Heffern that Mr. Krakat stole meats and linens from the Armed Forces Retirement Home and that I need to sign something that his attorney will send me saying that Mr. Krakat did not steal anything. Mr. Krakat threatened to take me to court if I didn't sign it.

5.     Mr. Krakat's statements to me during the telephone call were in a harassing manner.

6.     I told Mr. Krakat that I knew he had stolen items from the Retirement Home, including televisions, and that I was not going to sign anything saying he did not steal. I then hung up the phone.



I affirm that the foregoing is true to the best of my knowledge.

_____
James Cavanagh

DISTRICT OF COLUMBIA    ) ss:

Subscribed and sworn to before me this _11th_ day of December 2007.

_____
Notary Public

My Commission Expires: _____

FRANK LEONARD
NOTARY PUBLIC DISTRICT OF COLUMBIA
My Commission Expires August 14, 2012

1541104v1

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF COLUMBIA

ROBERT KRAKAT, et al.,        )
                              )
        Plaintiffs,           )
                              )
        -vs-                  )  CASE NO. 1:07-cv-00693-
BROOKS RANGE CONTRACT         )
RCL SERVICES, INC.,           )
                              )
        Defendant.            )

Thursday, November 29, 2007
Bowie, Maryland

Deposition of

KEVIN MARK HEFFERN, SR.

called for examination by counsel for the

Plaintiff, pursuant to notice, held at the

offices of Byrd & Byrd, LLC, 14300 Gallant Fox

Lane, Suite 120, Bowie, Maryland 20715,

beginning at 10:08 a.m., before Bonnie Marcus

Olachea, a notary public in and for the District

of Columbia, when were present on behalf of the

respective parties:



EXHIBIT C

1      Q.   Okay.  And my recollection from looking at Donald

2  Krakat's personnel file is that there was an indication of a

3  complaint made in Virginia by you.

4           Do you know what I'm talking about?

5           MS. DONER:  For clarification you said in your

6  review of Donald Krakat's --

7           MR. LEAHY:  Personnel file.

8           MS. DONER:  -- personnel file?

9           MR. LEAHY:  Documents produced by Brooks Range.

10          MS. DONER:  Okay, I'm not sure that that document

11 was produced as part of his personnel file but it was

12 produced.

13          MR. LEAHY:  Okay.  Anyway that part of it I don't

14 think is really important.

15          BY MR. LEAHY:

16     Q.   What I'm -- just trying to refresh your

17 recollection.  I am aware of a document that appears to

18 indicate that you filed a report in I believe the Loudoun

19 County Sheriff's office; is that correct?

20     A.   Oh, yes, yes.

21     Q.   Can you tell me about that?  And that was 2006?

22     A.   Yes.  I was getting numerous calls from Donny

23 Krakat and went to the Sheriff's Department to complain

24 harassment.

25     Q.   What calls were you getting from Donny Krakat?

1    A.    The majority of the calls came over the two-way
2    Nextel feature where it was just instant gibberish coming
3    across the telephone at any given time, day or night.  It
4    wasn't a phone call but it was a two-way feature on the
5    Nextel.
6          (Discussion off the record.)
7          BY MR. LEAHY:
8    Q.    And did you talk with Donny Krakat?
9    A.    No.
10   Q.    So you would hear Donny Krakat's voice coming over
11   the Nextel phone?
12   A.    Yes.
13   Q.    What did he say to you?
14   A.    The last time I recall when I actually got the call
15   over the radio I was actually in Virginia Beach.  And he said
16   he was at the end of my driveway and was going to kill my
17   dogs.
18   Q.    Anything ever happen to your dogs?
19   A.    No.
20   Q.    Do you know of anybody that saw Donny Krakat around
21   your property at that time?
22   A.    No.
23   Q.    Do you have any evidence that Donny Krakat was --
24   intended to kill your dogs other than the statement you heard
25   over the Nextel?

15

1       A.    Could you repeat that, please?

2       Q.    Sure.  Do you have any evidence that Donny Krakat

3  intended to kill your dogs other than the statement that you

4  heard over the Nextel?

5       A.    No.

6       Q.    What other comments do you recall hearing from

7  Donny Krakat in these telephone calls you've described?

8       A.    We're going to get you.  Your days are numbered.

9  You better watch your back.  That's about all I can remember.

10      Q.    Okay.  Did you ever -- well, when is the last time

11 you saw Donald Krakat?

12      A.    Two days ago.

13      Q.    Okay.  I understand you were present for a

14 deposition this week.  But other than the depositions that

15 we've had this last week, when is the last time that you saw

16 Donald Krakat?

17      A.    The day he was released from Brooks Range.

18      Q.    And that would be February 23, 2006?

19      A.    February 23, 2006.

20      Q.    When is the last time you saw Robert Krakat again

21 other than the depositions we've had this week?

22      A.    The same day.

23      Q.    How about Katie Farver, when is the last time that

24 you saw her?

25            Farver, F-A-R-V-E-R?

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| ROBERT KRAKAT and<br>DONALD KRAKAT,<br><br>    Plaintiffs,<br><br>v.<br><br>BROOKS RANGE CONTRACT SERVICES, INC.,<br><br>    Defendant. | )<br>)<br>)<br>)<br>)<br>)<br>) Case No: 1:07-cv-00693-RCL<br>)<br>)<br>)<br>) |

## **ORDER**

UPON CONSIDERATION OF Defendant Brooks Range Contract Services, Inc.'s Motion for Protective Order and for Sanctions against Plaintiffs; it is hereby

ORDERED that Defendant's Motion is GRANTED; and it is further

ORDERED that Plaintiffs Robert Krakat and Donald Krakat are ENJOINED from contacting any potential third-party witness in connection with the above-captioned suit unless such contact is in the presence of their counsel; and it is further

ORDERED that Plaintiff Robert Krakat is sanctioned as follows:

_____; and it is further

ORDERED that Plaintiff Robert Krakat shall pay to Defendant costs and attorney's fees of $_____ within 30 days from the date of this Order.

Entered this _____ day of _____ 200__.

                   _____
                   United States District Court Judge

- 2 -

WE ASK FOR THIS:


By _____/s/_____
Karen A. Doner (#458626)
Thomas J. McKee, Jr. (#492482)
WILLIAMS MULLEN, P.C.
8270 Greensboro Drive, Suite 700
McLean, Virginia  22102
(703) 760-5238
(703) 748-0244 (fax)
Counsel for Defendant


SEEN & _____ TO:


By _____
Timothy P. Leahy, Esq.
14300 Gallant Fox Lane, Suite 120
Bowie, Maryland 20715
Counsel for Plaintiffs

1542284v1