IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| ROBERT KRAKAT and <br> DONALD KRAKAT, <br><br> Plaintiffs, <br><br> v. <br><br> BROOKS RANGE CONTRACT SERVICES, INC., <br><br> Defendant. | ) <br> ) <br> ) <br> ) <br> ) <br> ) Case No: 1:07-cv-00693-RCL <br> ) <br> ) <br> ) <br> ) |

**DEFENDANT'S REPLY TO PLAINTIFFS' OPPOSITION TO MOTION FOR SUMMARY JUDGMENT**

Defendant Brooks Range Contract Services, Inc. ("Defendant" or "BRCS"), by counsel, hereby submits its Reply to Plaintiffs' Opposition to BRCS' Motion for Summary Judgment, and states as follows:

**I.   RESPONSE TO ALLEGED DISPUTED FACTS**

The same conclusory and speculative allegations contained in the Complaint regarding BRCS' wrongdoing form the basis for Plaintiffs' Opposition to BRCS' Motion for Summary Judgment, and should be disregarded. There is simply no credible evidence to support Plaintiffs' claims in this case. Plaintiffs have not identified any material factual disputes which would preclude summary judgment in BRCS' favor. As set forth in BRCS' Motion, in order to defeat summary judgment, **the non-moving party must produce evidence** on which a jury might rely, and the admission of "factual disputes that are irrelevant or unnecessary will not be counted." Anderson v. Liberty Lobby, 477 U.S. 242, 248 (1986) (emphasis added). Moreover, a non-moving party's **conclusory allegations are not sufficient** to defeat the entry of summary judgment. Beard v. Goodyear Tire and Rubber Co., 587 A.2d 195, 198 (D.C. 1991) (emphasis added).

The 13 purported material facts in dispute identified by Plaintiffs are insufficient to survive summary judgment as set forth below.

1.     Plaintiffs contend that many more individuals other than Howard Anastasi "were involved in the discussions related to the Krakats and the reporting of Heffern's fraudulent billings…" Plaintiffs, however, do not dispute that Mr. Anastasi was the only decision-maker regarding Plaintiffs' suspensions and terminations. The fact that others may have been involved in "discussions related to the Krakats" or "the reporting of Heffern's [alleged] fraudulent billings" is irrelevant because Mr. Anastasi, the sole decision-maker, had no knowledge of Plaintiffs' complaint(s) at the time the decision to terminate Plaintiffs' employment was made.

The Plaintiffs have failed in their Opposition to submit any evidence that Mr. Anastasi was not the sole decision-maker or that he had knowledge of Plaintiffs' complaint(s) at the time the termination decision was made. It is well-settled in this District that a plaintiff must be able to prove a causal connection between the company's knowledge of the employee's alleged protected activity and the decision to terminate. See Buggs v. Powell, 293 F.Supp.2d 135, 150-51 (D.D.C. 2003); Owens v. National Medical Care, Inc., 337 F.Supp.2d 131, 138 (D.D.C. 2004); Laboy v. O'Neil, 180 F.Supp.2d 18, 26 (D.D.C. 2001) (holding that summary judgment not appropriate when plaintiff failed to demonstrate that the decision maker had knowledge of the protected activity). Because Plaintiffs are unable to show any causal connection, BRCS' Motion for Summary Judgment should be granted.

2.     Plaintiffs' assert that it is "not logically sustainable" that Mr. Anastasi was not aware of their complaints because they made them "to other superiors for months prior to their termination" is without merit. Plaintiffs simply have no evidence that Mr. Anastasi was aware of the alleged complaint(s); their speculation that Mr. Anastasi was aware of the complaints

because others were aware of it is not supported by any facts.  Plaintiffs argue that a jury should be allowed "to resolve how many superior officers, either notified by the Krakats of the fraud, or simply as corporate officers, were involved in firing the Krakats."  Plaintiffs' contention should be disregarded because there is no evidence that anyone else was involved in the Plaintiffs' terminations as set forth above.

3.      Rather than submitting any credible evidence to support Plaintiffs' speculative theory that Mr. Anastasi was not the sole decision-maker or that he must logically have known about Plaintiffs' complaint(s), Plaintiffs instead attempt to attack Mr. Anastasi's credibility.  Such attacks are insufficient to defeat a motion for summary judgment.  See Crawford-El v. Britton, 523 U.S. 574, 600 (1998) ("[S]ummary judgment serves as the ultimate screen to weed out truly insubstantial lawsuits prior to trial.  At that stage, if the defendant-official has made a properly supported motion, the plaintiff may not respond simply with general attacks upon the defendant's credibility, but rather must identify affirmative evidence from which a jury could find that the plaintiff has carried his or her burden of proving the pertinent motive."); see Robinson v. Cheney, 876 F.2d 152 ,162 (1989) ("[I]t is well settled that a party may not defeat a properly supported motion for summary judgment merely by raising generalized questions as to the credibility of the movant's affiants."); see also McCullough v. Wyandanch Union Free Sch. Dist., 187 F.3d 272, 280 (2d Cir. 1999) (emphasizing that summary judgment cannot be defeated merely by impugning a witness's honesty).

4.      Plaintiffs admit that they did not complain to Mr. Anastasi in their Opposition brief.  As set forth above, their assertion that they complained to "other superiors" is irrelevant.

5.       Plaintiffs apparently dispute that BRCS self-reported the complaint(s) to the Federal Government and conducted its own investigation.  BRCS' Motion cited BRCS'

Interrogatory Answer No. 2. Plaintiffs do not submit any evidence to contradict this sworn statement of BRCS. Rather, Plaintiffs merely state that Robert Krakat's email to the Federal Government preceded any report by BRCS and cite only to the email. Thus, no genuine issue of material fact exists, and in any event, whether it was BRCS or Plaintiffs who reported the complaint(s) first to the Federal Government is irrelevant to the issues in the present case of whether Plaintiffs were wrongfully discharged or were defamed.

6.      Plaintiffs attempt to create a genuine issue of material fact by arguing that the Federal Government did not conduct a thorough investigation into Plaintiffs' allegations because, among other things, there were no investigative documents produced by the Bureau of Public Debt in response to Plaintiffs' FOIA request. Plaintiffs also claim that BRCS did not conduct a thorough investigation because it did not look into "whether any of BRCS employees were also employed by a subcontractor charging the Federal Government for work performed outside of Defendants' base contract." Even if Plaintiffs' contentions were true, which BRCS denies, neither the Federal Government nor BRCS' investigation into the alleged wrongdoing is relevant to Plaintiffs' claims.

7.      Plaintiffs attempt to impeach the credibility of Jerry Wessell, who is employed by the Federal Government based upon Mr. Wessell's purported relationship with Heffern, which according to Plaintiffs, explains Mr. Wessell's motive for failing to investigate. As set forth above, whether the Federal Government investigated Plaintiffs' allegations or not does not create a genuine issue of material fact because it is irrelevant to Plaintiffs' claims.

8.      Plaintiffs contend that it is irrelevant whether the Federal Government approved all of the work which is the subject of Plaintiffs' allegations of wrongdoing. The Federal Government's approval of the activities questioned by Plaintiffs is in fact relevant because it

shows that Plaintiffs' allegations of wrongdoing were not made in good faith and were purely speculative. Plaintiffs' lawsuit is based upon the underlying contention that Heffern and BRCS defrauded the Federal Government. As set forth in BRCS' Motion, however, the Federal Government itself approved of all of the actions and found no wrongdoing by BRCS. The questions raised by Plaintiffs in their Opposition brief (e.g., "The AFRH did not know that the sub contractors were Heffern's fiancée or friends, etc.") does not contradict the unequivocal testimony of Messrs. Wessell and Rouse that there in fact was no wrongdoing.

9. Plaintiffs dispute that BRCS' policy is to throw out the lowest [tree] bid because the policy is not in written form. Such assertion is not sufficient to create a genuine issue of material fact. There is no legal requirement that internal policies and procedures be in writing.

10. Plaintiffs point out that Heffern was demoted as a result of the Krakats' allegations apparently in an attempt to substantiate Plaintiffs' allegations of wrongdoing. However, there is no evidence that BRCS demoted Heffern as a result of any fraudulent billing. Rather, as noted in BRCS' Motion, *although BRCS found no wrongdoing by Heffern*, he was counseled by Howard Anastasi and others with respect to his poor judgment in using VCS as a vendor due to his personal relationship with the owner (citing Exh. D at Interrogatory No. 11) and he was also temporarily demoted to the position of Asst. Project Manager.

11. Plaintiffs' reference to Heffern's business relationship with William Jenkins is confusing. Plaintiffs claim that Mr. Jenkins "should be a check on any wrongdoing by [Heffern]" does not appear to be relevant to Plaintiffs' claims of wrongful discharge and/or defamation.

12. Plaintiff identifies Donna Sutherland's status as Heffern's fiancée to be a disputed fact but it in fact is not disputed. Nor is it disputed that Ms. Sutherland's company, Virginia

5

Contracting Services, was not allowed to continue to do work for BRCS because of a perceived conflict of interest. Thus, no genuine issues of material fact are in dispute as to these points.

13.     Plaintiff contends that a former employee of BRCS, Bryon Clare, complained about Heffern's "wrongdoing" to Katie Farver (a.k.a. Katie Brinn) and "possibly others", and that Mr. Clare was subsequently terminated "for reasons which Katie…thought wrongful." Plaintiff cites to Ms. Farver's deposition testimony. In fact, Ms. Farver merely testified that Mr. Clare told her that "there's something fishy with Kevin." See Exhibit 3 to Plaintiffs' Opposition brief at p. 226. When asked whether Mr. Clare complained to any one other than her, she answered that she didn't know who else he complained to. Id. Thus, Plaintiffs' statements in the Opposition brief are not supported by Ms. Farver's deposition testimony cited by Plaintiffs. Moreover, whether Ms. Farver, who was Heffern's administrative assistant, thought that Mr. Clare was terminated for reasons which, in her opinion, were wrongful, is of no consequence here. There is insufficient evidence to show any sort of pattern of wrongful discharge to the extent that is what Plaintiffs are attempting to do.

## II.    ARGUMENT

As set forth above, Plaintiffs have failed to create any genuine issues of material facts to preclude summary judgment. The remaining legal arguments raised in Plaintiffs' Opposition brief should be disregarded as well.

### A.    Plaintiff Lacks Evidence to Establish Prima Facie Case

Plaintiffs' Opposition seeks to skip over their initial hurdle of proving a prima facie case and instead spend a majority of their time arguing that Defendant's reasons for terminating Plaintiffs are mere pretext. Plaintiffs, however, have failed to prove the prima facie case and therefore do not even reach the issue of pretext.

Plaintiffs fail to set forth a prima facie case because their only potential evidence of wrongful discharge is the proximity of the discharge to the alleged complaint on February 17th. As noted in Defendant's original memorandum, this evidence alone is insufficient to state a prima facie case. See Owens v. National Medical Care, Inc., 337 F.Supp. 2d 131, 138 (D.D.C. 1998). Instead, proximity *and* knowledge by the decision-maker is what is required.

Plaintiffs' Opposition glosses over the requirement that the actual decision maker have knowledge of Plaintiffs' alleged protected activity by instead pointing to other individuals within BRCS such as Heffern, Claire, Starr, Brinn, Barker, Quinlan, Nealon, Phillips, and Duhamel who are alleged to have knowledge of Plaintiffs' activities. Yet this evidence amounts to nothing more than general knowledge among non-decision makers. As stated in Owens, "[a causal connection cannot exist solely based on the temporal proximity of [employee's] protected activity to his termination and *general 'company' knowledge* of [the employee's] protected activity."). Id. at 138 (emphasis added). Plaintiffs do not dispute that Anastasia was the sole decision maker in Plaintiffs' termination. As a result, Plaintiff's reliance upon Owen in their Opposition is misplaced because in Owen, the Plaintiff offered evidence that another individual had knowledge of protected activity *and* participated in the decision to terminate. In the instant case, the Plaintiffs offer nothing to show that the decision to terminate went beyond Anastasia. They rely instead upon unsupported assertions and beliefs. Such assertions are insufficient to satisfy Plaintiffs' affirmative duty to set forth evidence on this issue.

### B.    Plaintiffs Lacked a Good Faith Basis for Allegations Against Heffern

Plaintiffs' Opposition sets forth nothing more than vague and unsupported assertions when arguing that Plaintiffs had a good faith basis for the underlying allegations against Heffern and the Defendant for fraudulent billing. In fact, Plaintiffs' argument, at times, contradicts

7

Plaintiffs own statements in their respective depositions. As a result, Plaintiffs fail to meet their affirmative duty to offer evidence in support of their claims.

Plaintiffs' allegations regarding over-billing for air conditioners is a prime example of pure speculation. Such allegations were made without Plaintiffs having seen the invoices for the air conditioners and without any knowledge regarding charges for labor to the government. These allegations are based purely on Robert Krakat's belief that the air conditioners looked "cheap" and therefore could have been bought for much less. See Memorandum p. 13. And the testimony of Mr. Wessell confirmed that Robert Krakat's opinions were baseless, as Mr. Wessell stated that the typical mark-up limitations did not apply to the air conditioning units. See id. at 14.

Plaintiffs further allege that their good faith basis was rooted in BRCS contracting work with Virginia Contracting Services ("VCS"). (Opposition p. 14). Yet Robert Krakat admitted in his deposition that he had no knowledge of any work that Virginia Contracting Services did. See Memorandum p. 17. In fact, nearly all allegations by Plaintiffs with respect to VCS tended to be based upon Plaintiffs' own unsupported belief that because BRCS employees performed certain tasks, VCS must have been charging for the BRCS employees' work instead of worked performed by VCS employees.

Plaintiffs also allege that BRCS disregarded lower bids for tree removal service. Such allegations, however, completely disregard the evidence in this case. Plaintiffs admitted that they had no knowledge of the process for considering bids. See Memorandum p. 20-21. And, Mr. Wessell, upon whose deposition Plaintiffs rely, stated that if any low or high bid had been removed, it was not a problem because it is considered fair-priced as long as the final bid is within the range of the government estimate. See Memorandum p. 20. Mr. Wessell in fact

8

considered the bid that was actually submitted to be reasonable. <u>See id.</u> Plaintiffs' lack of knowledge, combined with Mr. Wessell's opinion, demonstrate that Plaintiffs' speculation was not made in good faith.

Despite previously stating he may withdraw allegations relating to overcharging for work not performed in connection the 2005 Christmas party, Plaintiffs' counsel continues to push the issue. Yet Plaintiffs' opposition fails to point to any evidence that Plaintiffs had any knowledge of this allegation. After all, Plaintiffs themselves both admit to having no knowledge of this allegation. <u>See</u> Memorandum p. 15.

### C.  **Plaintiffs Fail to Offer Evidence of Publication of Alleged Defamatory Statements**

Plaintiffs' opposition to Defendant's motion for summary judgment on the defamation count also blatantly ignores the evidence in this case. Ms. Farver admitted in her deposition that she was not present at the termination meetings and that she did not overhear the suspension meeting. Plaintiffs offer nothing in their Opposition to refute this evidence and completely ignore the fact that Ms. Farver first learned of allegations of theft against Plaintiffs from Plaintiffs themselves. As noted in Defendant's memorandum, even the Plaintiffs testified that they were not aware of anyone to whom such statements regarding alleged theft were made, and believed the Complaint's allegations to refer only to statements made by Anastasi to Plaintiffs during termination meetings.

Plaintiffs also attempt to overcome their lack of evidentiary support by arguing they should be entitled to a spoliation inference because Defendant did not document its investigation of Plaintiff. Plaintiffs, however, fail to offer any evidence that such documents ever existed. Plaintiffs' argument boils down to claiming that if Defendant had decided to document the investigation, such documents would be helpful to Plaintiffs. To reach that point, however,

Plaintiffs must first prove existence of documents.  A mere possibility is not itself sufficient.  See Rude v. The Dancing Crab at Washington Harbour, LP, 245 F.R.D. 18 (D.C. 2007) (denying a request for spoliation sanction because there was no evidence that a video tape of an incident, that plaintiff alleged would help prove his case, ever existed in the first place).

### III.     CONCLUSION

As set forth above, Plaintiffs have not raised any genuine issues of material fact sufficient to survive summary judgment being entered in BRCS' favor on all counts.  Plaintiffs' conclusory allegations and speculation are insufficient and summary judgment should be granted.

Respectfully submitted,

_____/s/_____
Karen A. Doner (#458626)
Thomas J. McKee, Jr. (#492482)
WILLIAMS MULLEN, P.C.
8270 Greensboro Drive, Suite 700
McLean, Virginia   22102
(703) 760-5238
(703) 748-0244 (fax)
Counsel for Defendant

**CERTIFICATE OF SERVICE**

     I HEREBY CERTIFY that on this 10th day of July 2008, a true copy of the foregoing document was sent via e-filing, to:

> Timothy P. Leahy, Esq.
> 14300 Gallant Fox Lane, Suite 120
> Bowie, Maryland 20715
> Counsel for Plaintiffs

                                      _____/s/_____
                                           Karen A. Doner

1627059v2