**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| **ROBERT KRAKAT and** | ) |
| **DONALD KRAKAT,** | ) |
| | ) |
| **Plaintiffs** | ) |
| | ) |
| **v.** | ) **Case No:  1:07-cv-00693-RCL** |
| | ) |
| **BROOKS RANGE CONTRACT SERVICES, INC.,** | ) |
| | ) |
| **Defendant** | ) |
| | ) |

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

**MEMORANDUM IN OPPOSITION TO DEFENDANT'S MOTION TO STRIKE**
**AND OR EXCLUDE FROM EVIDENCE PLAINTIFF'S INTERROGATORY**
**ANSWER INCORPORATING DE FACTO EXPERT REPORT**

     **NOW COME** the Plaintiffs Robert Krakat and Donald Krakat (collectively "Plaintiffs"), by and through their undersigned counsel, and hereby files this Memorandum in Opposition to Defendant's Motion to Strike and/or Exclude from Evidence Plaintiff's Interrogatory Answer Incorporating De Fact Expert Report:

     Defendant motions the Court to exclude a report that Plaintiffs indicated that they were **not** going to introduce at trial done by an individual that Plaintiffs indicated that they were **not** going to call at trial. "Art Widmann is **not** being designated as a trial expert and his report **won't** be introduced at trial. [Emphasis Added]." See June 27, 2008 email from Plaintiff's counsel as Exhibit B to Defendant's Motion to Strike. Nothing could be clearer and Defendant's indication that Plaintiff's counsel failed to consent to a striking of Mr. Widmann as an expert is inaccurate. Plaintiff does not object to Mr. Widmann, or his report, being excluded from trial.

Given the clarity of the agreement not to use Mr. Widmann, Plaintiff's concern in filing this memorandum in opposition is that one, Defendant considered a motion necessary, and two, that Defendant's purpose in filing its motion is to object to a calculation of Plaintiff's lost income because that calculation came after the discovery deadline. At page 8 of its motion, Defendant complains about delay in providing the calculation and cites cases related to delay in supplementing discovery responses.

There has been no delay by the Plaintiffs. Plaintiff gave the Defendant the formula for calculating their damages on September 28, 2007 when they initially responded to Defendant's discovery requests. "Plaintiffs calculate their damages based on their income with BRCS less income received from subsequent employment and an exact number will be supplemented and may require expert testimony based on lost future income." See Plaintiff's Answer to Interrogatory No. 18 as **Exhibit 1** hereto. Plaintiff's answers to interrogatories nos. 19 and 20 identified their employment and income history including history subsequent to their termination by the Defendant.

Plaintiffs intend to supplement their answers again as their exact lost income will not be calculable, as of the date of trial, until the date of trial. Plaintiff's September 28, 2007 discovery answers provided the formula for calculating their damages. At this point in time, Plaintiffs earn less than they were earning, or would be earning, with the Defendant. The recent supplementation by way of Mr. Widmann's report indicated Plaintiffs' current calculation of their damages to which Plaintiffs will testify, consistent with their interrogatory responses, at trial.

**WHEREFORE** Plaintiffs Robert and Donald Krakat respectfully request this Honorable Court enter an Order indicating that Art Widmann will not testify nor will his report be introduced but that Plaintiffs may continue to supplement their damages calculation consistent with their previously submitted discovery response.

Respectfully Submitted,

BYRD & BYRD, LLC

/s/

_____
Timothy P. Leahy, Bar No. 472964
14300 Gallant Fox Lane, Suite 120
Bowie, Maryland 20715
(301) 464-7448
(301) 805-5178 Fax
tleahy@byrdandbyrd.com

## CERTIFICATE OF SERVICE

    **I HEREBY CERTIFY** that on July 15, 2008, a copy of the foregoing was mailed first class, postage pre-paid to:

Karen A. Doner, Esq.
Williams Mullen, P.C.
8720 Greensboro Drive, Suite 700
McLean, Virginia 22102
(703) 760-5200
(703) 748-0244
Attorneys for Defendant Brooks Range Contract Services, Inc.

/s/

_____
Timothy P. Leahy, Bar No. 472964

**IN THE UNITED STATES**
**DISTRICT COURT FOR THE DISTRICT OF COLUMBIA**

| | | |
|---|---|---|
| **ROBERT KRAKAT, ET. AL.** | * | |
| | * | **CASE NO:**     **1:07-cv-00693-RCL** |
| **Plaintiffs** | * | |
| | * | |
| **v.** | * | |
| | * | |
| **BROOKS RANGE CONTRACT** | * | |
| **SERVICES, INC.** | * | |
| | * | |
| **Defendant** | * | |
| | * | |

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

**ORDER**

In consideration of the Defendant's Motion to Strike and/or Exclude from Evidence Plaintiff's Interrogatory Answer Incorporating De Fact Expert Report and Plaintiff's Memorandum in Opposition thereto, Defendant's Motion is **GRANTED** in part and **DENIED** in part, and it is further

**ORDERED** that Art Widmann will not testify at trial in this matter nor will his report be introduced; and it is further

**ORDERED** that nothing in this Order shall be construed as to preclude the Plaintiffs from supplementing their discovery responses or offering their trial testimony as to their calculation of damages as of and through the dates of trial.

_____     _____
Date              Honorable Royce C. Lamberth, U.S. District Court for the District of Md.

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| ROBERT KRAKAT and<br>DONALD KRAKAT,<br><br>Plaintiffs,<br><br>v.<br><br>BROOKS RANGE CONTRACT SERVICES, INC.,<br><br>Defendant. | )<br>)<br>)<br>)<br>)<br>) Case No: 1:07-cv-00693-RCL<br>)<br>)<br>)<br>) |

## PLAINTIFF'S ANSWERS TO DEFENDANT BROOKS RANGE CONTRACT SERVICES, INC.'S FIRST SET OF INTERROGATORIES

NOW COME Plaintiffs Robert Krakat and Donald Krakat. (collectively "Plaintiffs"), by and through their undersigned counsel, and pursuant to Rule 33(b) of the Federal Rules of Civil Procedure hereby answers the following Interrogatories propounded by Defendant Brooks Range Contract Services, Inc. ("Defendant") as follows:

### Objections

1.  Plaintiffs object to the interrogatories to the extent they call for disclosure of confidential information or documents protected by the attorney-client, work product or other privilege or protection.

2.  Plaintiffs object to the interrogatories to the extent they call for disclosure of information obtained or prepared in anticipation of litigation and/or trial preparation material without the showing required under the Rules of this Court.

3.  Plaintiffs object to the interrogatories to the extent they seek disclosure of information not relevant to the issues raised in this lawsuit, and not reasonably calculated to lead to the discovery of admissible evidence.

4.    Plaintiffs object to the interrogatories to the extent they are so vague, overly broad and unduly burdensome and oppressive as to render it impossible to respond in any reasonable manner or amount of time.

5.    Plaintiffs object to the interrogatories to the extent they seek information or documents originating from entities other than Plaintiffs, or generally available and in the public domain and information or documents that are not in the custody, possession or control of Plaintiffs.

6.    Plaintiffs object to the interrogatories to the extent they seek to extend the obligations of Plaintiffs beyond those set forth in the Rules of Civil Procedure governing this action.

## INTERROGATORIES

**INTERROGATORY NO. 1:**    Identify all persons who have knowledge of any of the facts and/or allegations set forth in the Complaint, and for each such person, describe in detail the facts and/or allegations of which they have knowledge.

**Answer:**

a) Kevin Heffern, a project manager, has knowledge of allegations that Plaintiffs were stealing, and of Plaintiffs' discharge from employment.

b) Howard Anastasi has knowledge of allegations that Plaintiffs were stealing, and of Plaintiffs' termination from employment.

c) Tom Starr, an assistant facility director, Donna Smith of AFRH, Jerry Wessell, a contracting officer and Technical Representative, and David Rouse, a contracting officer

2

representative, all have knowledge of complaints of Kevin Heffern's fraudulent billing made by Robert Krakat.

d) Katie Farver, an employee of Brooks Range Contracting Service, Inc., has knowledge of Kevin Heffern's fraudulent billing, of complaints of Kevin Heffern's fraudulent billing made by Donald Krakat, and of the Plaintiffs' termination from employment.

e) Chuck Quinlan, CEO of Brooks Range Contracting Services, Inc., has knowledge of Plaintiffs' employment and termination, and of allegations of theft.

f) A.R. Bryant Co., run by a friend of Heffern who has knowledge of low tree bids having been thrown out by Heffern.

g) Byron Claire who has knowledge of Heffern's actions, reported same to BRCS, and was fired.

**INTERROGATORY NO. 2**:        Describe in detail all facts upon which you base your allegations that each Defendant retaliated against you. Include in your answer the nature and date of such conduct and the identity of all individuals with knowledge of such conduct.

**Answer:**        See Complaint, Also, after Byron Claire had reported Heffner's actions to BRCS and been fired, and after Plaintiffs had raised the issue directly with Heffern and Thomas Starr, both Byron Claire and Thomas Starr were fired. On February 17, 2006, Plaintiff Robert Krakat informed David Rouse, a contracting officer representative for the Armed Forces Retirement Home (AFRH), of what appeared to be fraudulent billing by Kevin Heffner. Mr. Rouse assured Plaintiff Robert Krakat that he would check into the matter. On February 21, 2006, both Plaintiffs were suspended as Kevin Heffern and Howard Anastasi alleged that the AFRH said that Plaintiffs were stealing. On February 23, 2006, Plaintiffs were fired from their positions at Brooks Range Contracting Services, Inc. and no proof of the alleged theft was

3

provided other than the allegations made by Kevin Heffern and Howard Anastasi. Shortly after

the Plaintiffs were fired, one of Plaintiffs' work colleagues, Katie Farver, addressed Kevin

Heffern's fraudulent billing with Howard Anastasi and Ms. Farver was also fired the morning of

February 23, 2007.

**INTERROGATORY NO. 3:**    Identify all Federal and District of Columbia

statutes you alleged BRCS violated, including without limitation, those relating to BRCS's

invoicing and its termination of your employment.

**Answer:** Plaintiffs object to this interrogatory as it calls for a legal conclusion. Without

waiving the objection, see D.C. Code §§ 22-3201 et. seq. for both fraud and theft. D.C. Code §

22-1805a.

**INTERROGATORY NO. 4:**    Identify all persons to whom you complained of,

and/or reported, the allegedly unlawful conduct of Heffern during your employment with BRCS,

and which you reference in your Complaint.

**Answer:**    See Complaint, also Robert Krakat complained of and/or reported Heffern

to Tom Starr, Donna Smith, Jerry Wessell, and David Rouse. On information and belief, Byron

Claire also discussed the matter with BRCS

Donald Krakat complained of and/or reported Heffern to Robert Krakat and to Katie

Farver.

**INTERROGATORY NO. 5:**    Describe in detail all facts and circumstances

surrounding your termination of employment from BRCS. Include in your answer the following:

(a) the identity of the person(s) who told you that you were being terminated; (b) the date, time,

and location thereof; (c) the substance of what was told to you and the substance of your

response thereto; (d) the identity of persons who were present or who otherwise may have heard the discussion; and (e) the identity of all documents relating to your termination.

**Answer:** See Complaint, also on February 23, 2006 at approximately 10:00 a.m., Howard Anastasi and Kevin Heffern fired both Robert and Donald Krakat from Brooks Range Contracting Services, Inc. Plaintiffs were informed that the reason for their termination was that the AFRH had alleged that Plaintiffs were stealing. Plaintiffs responded that the allegations of theft were not true. Katie Farver was present at the meeting and she also stated the allegations made against Plaintiffs were not true. No documents were presented to Plaintiffs relating to their termination.

**INTERROGATORY NO. 6:**    Identify any and all communications that you had with any employee of BRCS regarding the subject matter of the Complaint. Include in your answer the following for each such communication: (a) the date, time and location thereof; (b) the identity of the person and the name of their employer with whom you had the communication; (c) the identity of persons who were present or who otherwise may have heard the communication; (d) the substance and form (e.g., in person, email, telephone conversation, etc.) of the communication; and (e) the identity of all documents relating to such communication.

**Answer:** See Complaint and in response to Interrogatory No. 2 and 4. Also during December 2005, Plaintiff Robert Krakat had a telephone conversation with Tom Starr of Brooks Range Contracting Services, Inc. Robert Krakat's wife, Shirley Krakat, and Donald Krakat were both present in the room where Robert Krakat spoke on the telephone. The discussion concerned roofing work that Donald Krakat had completed at AFRH, which work had been approved by Kevin Heffern.

**INTERROGATORY NO. 7:**    Describe in detail all "accusations of theft, poor performance, and excessive absenteeism," or any other statements alleged by you to be defamatory, regarding Plaintiffs, and allegedly made by BRCS. Include in your answer the following for each such alleged statement: (a) the date, time, and location thereof; (b) the identity of the person who made the alleged statement; (c) the identity of persons who were present or who otherwise may have heard the statement; (d) the specific substance and form (e.g., in person, email, telephone conversation, etc.) of the alleged statement; and (e) the identity of all documents relating to such alleged statement.

**Answer:** On February 23, 2006 at approximately 10:00 a.m., Howard Anastasi and Kevin Heffern informed Plaintiffs that they were being terminated as the AFRH had alleged that Plaintiffs were stealing. Katie Farver was present at this meeting. Robert Krakat subsequently asked Mr. Rouse, the chief operating engineer of AFRH, if he or anyone at the home had made allegations that the Plaintiff's had stolen from the AFRH, and Mr. Rouse stated that no one at AFRH made statements alleging that Plaintiff's stole.

**INTERROGATORY NO. 8:**    Describe in detail all facts which support your contention that "Heffern allegedly charged the government over $500 ea. for air conditioning units which cost BRCS $200.00 when BRCS was allowed a 12% markup – to $224.00," as alleged in paragraph 8 of the Complaint. Include in your answer the following: (a) how and from whom you learned of the allegation; (b) the date you learned of it; (c) the identity of persons who were present or who otherwise may have heard the communication; and (d) the identity of all other persons with knowledge of it.

**Answer:**    During the summer of 2005, Plaintiff Robert Krakat was informed by Jerry Wessell, a Contracting Officer for AFRH, Katie Farver, and Donald Krakat that AFRH

6

paid $500.00 each for air conditioning units that Kevin Heffern ordered. Jerry Wessell made

comments as to the overcharging for the air conditioning in the presence of Kevin Heffern and

Plaintiffs and Kevin Heffern laughed at the comments but did not deny overcharging.

**INTERROGATORY NO. 9:**    Describe in detail all facts which support your

contention that "Heffern allegedly charged the government for work that BRCS was not doing in

connection with the 2005 Christmas Party" as alleged in paragraph 9 of the Complaint. Include

in your answer the following: (a) how and from whom you learned of the allegation; (b) the date

you learned of it; (c) the identity of persons who were present or who otherwise may have heard

the communication; and (d) the identity of all other persons with knowledge of it.

**Answer:** Kevin Heffern made statements to Plaintiff Robert Krakat that he had "ways"

to pay for the Christmas party, even though all petty cash was depleted at the time. Katie Farver

may have more information on this matter and this answer will be supplemented.

**INTERROGATORY NO. 10:**    Describe in detail all facts which support your

contention that "Heffern allegedly overcharged the government for cleaning up cement," as

alleged in paragraph 10 of the Complaint. Include in your answer the following: (a) how and

from whom you learned of the allegation; (b) the date you learned of it; (c) the identity of

persons who were present or who otherwise may have heard the communication; and (d) the

identity of all other persons with knowledge of it.

**Answer:** Plaintiffs were informed of overcharging for the cement cleanup by Katie

Farver, who is believed to have personal knowledge. Plaintiffs cannot recall a specific date that

they learned of the overcharging.

**INTERROGATORY NO. 11:**    Describe in detail all facts which support your

contention that "Heffern allegedly allowed Virginia Contracting Services, which he owns, to

charge Defendant BRCS for work that Donald Krakat and other BRCS employees performed during normal business hours, for which the Home was not to be charged, including clean-up of the LaGarde Kitchen, Pipes building roofing and canopy repair, sewage clean up in the Pipes Building, other plumbing work, and painting approximately 10 rooms at the Home which VCS did not paint," as alleged in paragraph 11 of the Complaint. Include in your answer the following: (a) how and from whom you learned of the allegation; (b) the date you learned of it; (c) the identity of persons who were present or who otherwise may have heard the communication; and (d) the identity of all other persons with knowledge of it.

**Answer:** Plaintiff Robert Krakat requested AFRH Housekeeping staff to clean up the LaGarde Kitchen. The AFRH housekeeping staff completed all cleanup of the LaGarde Kitchen mess. On or about October 6, 2005, Kevin Heffern submitted an invoice for cleanup of the LaGarde Kitchen by Virginia Contracting Services.

Plaintiff Robert Krakat personally witnessed Brooks Range Contracting Services employees perform sewage cleanup and repair the canopy of the Pipes building during normal business hours. On Saturday, November 11, 2005, Plaintiff Robert Krakat also witnessed Donna Sutherland and Kevin Heffern working on the roof of the Pipes Building. Donna Sutherland and Kevin Heffern were spreading roof coating on the canopy. Kevin Heffern subsequently submitted an invoice of $3,855.00 for payment to Virginia Contracting Services for work not performed by Virginia Contracting Services.

Brooks Range Contracting Services, Inc. employees painted the rooms in the Sheridan and Scott buildings and Kevin Heffern submitted an invoice for payment to Virginia Contracting Services for work not performed by Virginia Contracting Services.

**INTERROGATORY NO. 12:**    Describe in detail all facts which support your contention that "Heffern allegedly threw out low bids for tree service, related to a 2005 summer storm, in order to hire A.R. Bryant, a company owned by a friend of Heffern," as alleged in paragraph 12 of the Complaint. Include in your answer the following: (a) how and from whom you learned of the allegation; (b) the date you learned of it; (c) the identity of persons who were present or who otherwise may have heard the communication; and (d) the identity of all other persons with knowledge of it.

**Answer:** Plaintiffs are in possession of a Proposal by Coffman Construction Company in the amount of $189,000.00. The contract was not awarded to Coffman Construction Company, but to A.R. Bryant, who was a friend of Kevin Heffern. Brooks Range Contract Services, Inc. employees, and Katie Farver all had personal knowledge that A.R. Bryant was a friend of Kevin Heffern. A copy of the Coffman proposal is included with Plaintiff's document production.

**INTERROGATORY NO. 13:**    Describe in complete factual detail the February 17, 2006 communications between Robert Krakat, Donna Smith, Jerry Wessell, and David Rouse, during which Robert Krakat allegedly gave Rouse documentation on the alleged problems with the work and invoicing of Heffern, as alleged in paragraph 16 of the Complaint. Include in your answer the following: (a) the date, time, and location of such communications; (b) the specific substance and form of the communications; (c) the identity of the person who made any such statements; (d) the identity of persons who were present or who otherwise may have heard the communications; and (e) identify all documents you allege in paragraph 16 of the Complaint to have given David Rouse.

**Answer:** On February 16, 2006, Plaintiff Robert Krakat went to Mr. Rouse about Kevin Heffern overcharging BRCS for contracting services. Plaintiff Robert Krakat informed Mr.

9

Rouse that he was under the impression that Mr. Heffern was trying to get rid of him. Mr. Rouse

informed Plaintiff Robert Krakat that he was going straight to Mr. Quinlan, CEO of BRCS to

discuss the situation, and stated that he would get back to Plaintiff Robert Krakat.

**INTERROGATORY NO.14:**    Describe in detail all facts and circumstances which

support your contention that Defendant "acted tortiously and with fraud, ill will, recklessness,

wantonness, oppressiveness, willful disregard of the Plaintiff's rights, and under circumstances

that aggravated Plaintiff's injuries," as alleged in paragraphs 34, 40, 45, and 51 of the Complaint.

**Answer:** Plaintiffs object to this interrogatory as it calls for a legal conclusion. Without

waiving that objection, Defendants terminated Plaintiffs' employment with BRCS for allegedly

stealing from AFRH, an allegation that was made up by Defendants in an effort to keep Plaintiffs

from exposing the fraudulent billing of Defendants to AFRH. After the termination of Plaintiffs,

Defendants relayed the false statements, that Plaintiffs stole from AFRH, to other individuals,

including Katie Farver, other BRCS employees and government agents, painting Plaintiff's in a

bad light. See also factual allegations included in the Complaint.

**INTERROGATORY NO. 15:**    Describe in detail all facts and circumstances which

support your contention that "Defendant reduced its false accusations to writing and published

those accusations to individuals who worked for both the Home and for BRCS," as alleged in

paragraphs 39 and 50 of the Complaint. Include in your answer the following: (a) how and from

whom you learned of the allegation; (b) the date you learned of it; (c) the identity of persons who

were present or who otherwise may have heard the communication; (d) the identity of all other

persons with knowledge of it; and (e) the identity of all such writings or documents referred to in

the allegation.

**Answer:** Plaintiffs object to this interrogatory as it calls for a legal conclusion. Without waiving that objection, on information and belief Howard Anastasi prepared the fake disciplinary log, attached to Plaintiff's document production, containing false and defamatory statements, and passed it on to other employees of BRCS. Plaintiffs reserve the right to supplement this answer as discovery progresses.

**INTERROGATORY NO. 16:**    Describe in detail all disciplinary actions taken against you by BRCS, including without limitation, all formal and informal counseling sessions, reprimands, and warnings. Your answer should include, without limitation, the date of each such action, the subject of such action, from whom the action was received, and the steps you took to correct your conduct and/or misconduct.

**Answer:** No disciplinary action was ever taken against Plaintiffs by BRCS, prior to Plaintiffs' termination.

**INTERROGATORY NO. 17:**    If you have ever been arrested and/or convicted of a crime, state the date of every arrest/conviction and the court, identify each crime for which you were arrested and/or convicted, and the city and state of each such arrest/conviction.

**Answer:** Plaintiff Robert Krakat has never been arrested and/or convicted of a crime. Plaintiff Donald Krakat was convicted of DUI in May 2004 in Carroll County, Maryland.

**INTERROGATORY NO. 18:**    Describe in detail your claim for monetary damages, including: (a) each element of monetary damages claimed, (b) the amount of each element of monetary damages claimed, and (c) a complete explanation of the calculation method, amount or value of each element of money damages claimed.

**Answer:** Objection to the extent the interrogatory seeks a legal conclusion. Without waiving the objection, Plaintiffs have each lost income, continue to lose income, have suffered

11

emotional damages, and assert that punitive damages are appropriate given Defendant's malice. See Answer nos. 19 and 20 for income information. Plaintiffs calculate their damages based on their income with BRCS less income received from subsequent employment and an exact number will be supplemented and may require expert testimony based on lost future income.

**INTERROGATORY NO. 19:**    Describe in detail all income that you have received since your termination from BRCS, including the source of that income, any employer from whom the income was received, the tasks/job performed to earn the income, and the date the income was received.

**Answer**:

**Plaintiff Robert Krakat:**

a.    From March, 2006 through September 2006, Robert Krakat received unemployment income, from Jorden Howard Tech., in the amount of $648.00, bi-weekly.

b.    From January 29, 2007 through May 7, 2007, Robert Krakat worked for Rill's Bus as a school bus driver. He was paid $13.00 per hour and worked 20 hours per week.

c.    From May 21, 2007 through June 14, 2007, Robert Krakat was employed by Wide Win Bus Service as a bus driver. He was paid $14.00 per hour and worked 25 hours per week.

**Plaintiff Donald Krakat:**

a.    From March, 2006 through July 2006, Donald Krakat received unemployment income in the amount of $648.00, bi-weekly.

b.    From August 2006 to November 2006 Donald Krakat was employed by Mainlining Service, Inc. He was paid a total of $5,835.00 during his employment with Mainlining Services, Inc.

c.    From March 2007 through present Donald has been employed by PNM and earns $13.00 per hour, His work weeks vary from 35 to 20 hours per week.

**INTERROGATORY NO. 20:**    Provide a complete history of your past employment, including for each place of employment, the name of employer, address, period of employment, your salary or hourly wage at the beginning and end of employment, the name of your supervisor, your job title, a description of your work, and your reason for leaving each place of employment.

**Answer:**

**Plaintiff Robert Krakat:**

a.    From 1974 through 2004, Robert Krakat worked for Armed Forces Retirement Home as the Night Building Engineer at the AFRH at 3700 N. Capitol Street, NW, Washington, DC 20317. Mr. Krakat was in charge of the building maintenance. In 2004, Robert Krakat made $59,000.00.

b.    From 2004 through 2005, Robert Krakat worked for Jorden Howard Tech., contractors hired by AFRH, as an assistant supervisor at the AFRH. Although his job title changed, his duties did not. He earned $24.00 per hour and worked 40 hours per week.

c.    From 2005 through 2006, Robert Krakat worked for BRCS as a crew chief at AFRH. Again, although his job title changed, his duties did not. Mr. Krakat earned a total of $12,837.50 in 2006.

13

**Plaintiff Donald Krakat:**

a.    From 1992 to 2002, Donald Krakat was employed by C&B Electric in Clarksville, Maryland as an electrician. His duties consisted of wiring sulfites. He earned $18.00 per hour.

b.    From 2002 through 2003, Donald Krakat was employed by Royal Electric in Sykesville, Maryland as an electrician. His duties consisted of wiring houses. He earned $16.00 per hour.

c.    From 2003 through 2005, Donald Krakat was employed by JHT Armed Forces Retirement Home in Washington, D.C. as an HVAC Technician. His duties consisted of ac unit maintenance. He earned approximately $18.00 per hour.

d.    From 2005 through 2006, Donald Krakat worked for BRCS as a building mechanic. His duties consisted of maintaining the plumbing and ac units. He earned $20.99 per hour.

**INTERROGATORY NO. 21:**    Describe in detail each attempt you have made to find employment from your date of termination from BRCS to the present, including the company and/or individual contacted; the dates of contact; the method(s) of contact (i.e., telephone, letter, personal interview); the result of such contact, including whether a job was offered; whether a written job application was completed; if you were employed, the date of such employment; and the wages you have received as a result of such employment.

**Answer:** Plaintiffs object to this interrogatory as it is unduly burdensome. Without waiving that objection, Plaintiffs have both sent out resumes to numerous prospective employers. Plaintiffs have actively engaged in job hunting since their termination. Currently, Plaintiff Robert Krakat is taking training courses offered by Eyre Bus Services. Once he completes the

14

training courses, he will have the opportunity to work for Eyre Bus Services as a bus driver.

Plaintiff Donald Krakat is currently working for P.M. Installation for 25 to 30 hours per week at

$13.00 per hour. Please see Answer Nos. 19 and 20 for a complete job history for each Plaintiff.

**INTERROGATORY NO. 22:**    Identify each health care provider, including

psychologists, psychiatrists, physicians, social workers, therapists, counselors, family counselors,

mental health care nurses, or crisis clinics you have consulted with or been treated or examined

within the last 10 years, and specify whether the treatment was related to any psychological,

psychiatric or emotional damages that you contend were a result of Defendant's acts or

omissions.

**Answer:**  Objection as to relevance to the extent that the interrogatory requests

information which predates Plaintiffs' termination. Without waiving the objection, Plaintiff

Robert Krakat has been seen by Dr. Baig, M.D., his primary care physician. He was treated for

high blood pressure as a result of stress from his termination from BRCS. Plaintiff Donald

Krakat has not seen any health care provider for any treatment of any illnesses or injuries related

to Defendant's acts or omissions.

**INTERROGATORY NO. 23:**    Identify each expert witness you anticipate calling

at the trial of this matter, specifying (a) the name, address, occupation and the area of expertise

of such expert, (b) the subject matter to which the expert will testify, (c) the substance of the

facts and opinions to which he is expected to testify, and (d) the grounds for each opinion and

his/her qualifications.

**Answer:**  Plaintiffs have not yet identified any experts, but will supplement this response

once experts have been retained and/or identified. Plaintiffs anticipate that it may be necessary to

designate an expert on the valuation of lost future income.

15

**INTERROGATORY NO. 24:**     State whether you have been involved as a party in any litigation or administrative action other than the instant case. For each such action, state (1) the court or agency in which such litigation or action was brought, (2) the parties to the litigation or administrative action, and (3) the outcome of such litigation or administrative action.

**Answer**: Neither plaintiff has been involved as a party in any litigation or administrative action other than the instant case.

**INTERROGATORY NO. 25:**     State whether you intend to rely on any alleged admission made by any Defendant and/or Defendant's agents, in this action; and if so, identify the person making the admission, the person(s) to whom the admission was made, any document relating to such admission, and the substance of each such admission.

**Answer:** Objection to the extent the request seeks a legal conclusion. Without waiving the objection, see Heffern, Rouse, Starr, and Farver statements disclosed herein. Plaintiffs reserve the right to supplement this answer as discovery continues.

**WE SOLEMNLY DECLARE AND AFFIRM** under the penalties of perjury that we are over eighteen (18) years of age, competent to make this declaration, and that the contents of the foregoing Answers to Interrogatories are true to the best of our knowledge, information and belief.


_____
Robert Krakat

_____
Donald Krakat

16

Respectfully Submitted:

Byrd & Byrd, LLC

Timothy P. Leahy
14300 Gallant Fox Lane, Suite 120
Bowie, Maryland 20715
(301) 464-7448
(301) 8-5-5178 – Fax
Tleahy@byrdandbyrd.com
*Attorney for Plaintiffs*

## CERTIFICATE OF SERVICE

**I HEREBY CERTIFY** that on this 2 day of September, 2007, a copy of the foregoing Answers to Interrogatories was mailed first class, postage pre-paid to:

Karen A. Doner (Bar No. 458626)
Thomas J. McKee, Jr. (Bar No. 492482)
Williams Mullen, P.C.
8270 Greensboro Drive, Suite 700
McLean, Virginia 22102
703-760-5200 (phone)
703-748-0244 (fax)

Timothy P. Leahy

**IN THE UNITED STATES**
**DISTRICT COURT FOR THE DISTRICT OF COLUMBIA**

| | | |
|---|---|---|
| **ROBERT KRAKAT, ET. AL.** | * | |
| | * | **CASE NO:    1:07-cv-00693-RCL** |
| **Plaintiffs** | * | |
| | * | |
| **v.** | * | |
| | * | |
| **BROOKS RANGE CONTRACT** | * | |
| **SERVICES, INC.** | * | |
| | * | |
| **Defendant** | * | |
| | * | |

**\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\***

**ORDER**

In consideration of the Defendant's Motion to Strike and/or Exclude from Evidence Plaintiff's Interrogatory Answer Incorporating De Fact Expert Report and Plaintiff's Memorandum in Opposition thereto, Defendant's Motion is **GRANTED** in part and **DENIED** in part, and it is further

**ORDERED** that Art Widmann will not testify at trial in this matter nor will his report be introduced; and it is further

**ORDERED** that nothing in this Order shall be construed as to preclude the Plaintiffs from supplementing their discovery responses or offering their trial testimony as to their calculation of damages as of and through the dates of trial.

_____    _____
Date                 Honorable Royce C. Lamberth, U.S. District Court for the District of Md.