UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

|  |  |  |
|---|---|---|
| ROBERT KRAKAT and <br> DONALD KRAKAT, <br><br> Plaintiffs, <br><br> v. <br><br> BROOKS RANGE CONTRACT <br> SERVICES, INC., <br><br> Defendant. | ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) | Civil Action No. 07-693 (RCL) |

**MEMORANDUM OPINION**

I.   **BACKGROUND**

Beginning in 1973 and 2005, respectively, Plaintiffs Robert and Donald Krakat were employed at the Armed Forces' Retirement Home (the "Home"), located in the District of Columbia. (Comp. ¶¶ 3-4.) In 2005, defendant Brooks Range Contract Services, Inc. ("Brooks Range") was awarded the contract to manage the facility. Shortly thereafter, Brooks Range hired the Krakats to continue working at the Home. (Comp. ¶¶ 4-5.) During their period of employment, the plaintiffs were supervised by Kevin Heffern, defendant's Project Manager for the Home. (Comp. ¶ 6.) The Krakats do not dispute that they were at-will employees.

In their complaint the plaintiffs allege numerous improprieties in the manner in which the Home was operated by Brooks Range under Heffern. (*See* Comp. ¶¶ 8-12.) Plaintiffs further allege that Robert Krakat reported such improprieties to various employees of Brooks Range in

1

November or December of 2005 (Comp. ¶ 14), and to various officials responsible for overseeing Brooks Range's contract to operate the Home on February 17, 2006 (Comp. ¶ 16). According to plaintiffs, on February 21, 2006 they were suspended "pending an investigation into theft alleged [against them] by Heffern and [Brooks Range]." (Comp. ¶ 17.) On February 23, 2008, the Krakats were fired. (Comp. ¶ 23.)

The Krakats assert they were fired in retaliation for "refusal to knowingly participate in the alleged fraudulent activity" undertaken by Brooks Range at the Home. (Comp. ¶¶ 31, 42.) This assertion forms the basis of their wrongful termination claims in Counts I and III of the complaint. Brooks Range denies that the Krakats were terminated because of any allegations of theft, but instead "as a result of their ongoing poor performance issues." (Def.'s Mem. 9.)

In Counts II and IV, plaintiffs each allege they were victims of "[d]efamation, [s]lander and [l]ibel" at the hands of Brooks Range. (Comp. 6, 8.)

## II.    DISCUSSION

### A.    Legal Standard

A motion for summary judgment can only be granted if the record shows that "there is no genuine issue as to any material fact and that the moving party is entitled to a judgement as a matter of law." Fed. R. Civ. P. 56(c). A moving party is "entitled to judgment as a matter of law" against "a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). "Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment. Factual disputes that are irrelevant or unnecessary will not be counted."

*Anderson v. Liberty Lobby*, 477 U.S. 242, 248 (1986).

There is a genuine issue as to a material fact "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.* "If factual issues can 'reasonably be resolved in favor of either party,' there is a need for a trial." *Dunaway v. International Broth. of Teamsters*, 310 F.3d 758*,* 761 (D.C. Cir. 2002) (quoting *Anderson*, 477 U.S. at 250). For this reason, the court "should review all of the evidence in the record." *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 150 (2000). In deciding a motion for summary judgement, the court views the evidence in the light most favorable to the non-moving party and according that party the benefit of all reasonable inferences. *Anderson*, 477 U.S. at 255 (citing *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 158-59 (1970)). "However, the court need not accept inferences drawn by plaintiffs if such inferences are unsupported by the facts set out in the complaint. Nor must the court accept legal conclusions cast in the form of factual allegations." *Kowal v. MCI Communications Corp.*, 16 F.3d 1271, 1276 (D.C. Cir. 1994).

    **B.**    **Plaintiffs' Wrongful Termination Claims**

"It has long been settled in the District of Columbia that an employer may discharge an at-will employee at any time and for any reason, or for no reason at all." *Adams v. George W. Cochran & Co., Inc.*, 597 A.2d 28, 30 (D.C. 1991). A "very narrow" exception to the at-will doctrine exists "when the sole reason for the discharge is the employee's refusal to violate the law, as expressed in a statute or municipal regulation." *Id.* at 34. The so-called "*Adams* exception" requires "an outright refusal to violate a specific law, with the employer putting the employee to the choice of breaking the law or losing his job." *Thigpen v. Greenpeace, Inc.*, 657 A.2d 770, 771 (D.C. 1995). Plaintiff must prove, by a preponderance of the evidence, that this

outright refusal was the "sole reason" for his dismissal. *Adams*, 597 A.2d at 34.

As in the present case, in *Thigpen* the plaintiff claiming wrongful termination from at-will employment had the burden of demonstrating his allegedly wrongful termination fell within the *Adams* exception. The plaintiff, a payroll clerk, believed his employer was in violation of the District of Columbia's minimum wage law and reported this to his superiors and to the District's Wage and Hour Office. *Thigpen*, 657 A.2d at 770. Several months later the plaintiff was "discharged by [his employer] assertedly due to downsizing but in fact, the complaint alleged, for refusing to violate the laws of the District of Columbia." *Id.* Upholding a lower court's dismissal of Thigpen's claims, the D.C. Court of Appeals explained:

> "[the plaintiff] argues . . . that his complaints to his employer and to the District authorities constituted at least a constructive refusal to violate the law, by way of omission rather than a commission, sufficient to bring him within the Adams holding.
>
> We do not think that Adams can be stretched to encompass such an argument. Functionally, the action taken by Thigpen here is indistinguishable from that which could have been taken by any other employee in the organization, constituting classic whistle-blowing. As Adams demonstrates, the exception requires an outright refusal to violate a specific law, with the employer putting the employee to the choice of breaking the law or losing his job. That simply is not the situation alleged to have existed here.

*Id.* at 771 (footnote and quotation marks omitted). As the Court indicated in an explanatory footnote, "[o]therwise put, appellant asserts that his 'refusal' consisted of 'speech and conduct directed to gain compliance with the law.'" *Id.* at n.3.

After *Thigpen*, a divided D.C. Court of Appeals indicated that further expansion of the Adams exception may be possible. *Carl v. Children's Hosp.,* 702 A.2d 159 (D.C. 1997). In doing so, the Court of Appeals stated that requests to recognize additional public policy exceptions to the at-will employment doctrine should be addressed on a case-by case basis

4

pursuant to the following instructions:

> Th[e] court should consider seriously only those arguments that reflect a clear mandate of public policy-i.e., those that make a clear showing, based on some identifiable policy that has been "officially declared" in a statute or municipal regulation, or in the Constitution, that a new exception is needed. Furthermore, there must be a close fit between the policy thus declared and the conduct at issue in the allegedly wrongful termination.

*Carl*, 702 A.2d at 164. However, the D.C. Court of Appeals has subsequently reaffirmed that, in order to qualify for the Adams exception, a plaintiff must be "put to the 'Hobson' choice of either doing an illegal act . . . or being fired if [he] did not elect the former course." *Mandsager v. Jaquith*, 706 A.2d 39, 42 (D.C. 1998).

In the instant case, plaintiffs do not specifically request any expansion of the *Adams* exception. And, this Court declines to attempt such expansion on its own initiative.

More to the point, just as in *Thigpen* and *Mandsager*, plaintiffs in the instant case have failed to demonstrate that their allegedly unlawful termination is subject to the Adams exception as construed above. The complaint does not assert that either Krakat was actually instructed to violate the law or face termination. Nor have plaintiffs produced any evidence to show they were "put to the 'Hobson' choice of either doing an illegal act . . . or being fired if [they] did not elect the former course." *Mandsager*, 706 A.2d at 42. Further, plaintiffs have not demonstrated that, faced with such a "Hobson choice," they refused to violate a law.

It is thus clear, as a matter of law, that plaintiffs cannot prevail on their wrongful termination claims – they do not qualify for the Adams exception to the District of Columbia's at-will employment doctrine. Accordingly, Brooks Range is entitled to summary judgment as to Counts I and III.

    C.    **Plaintiffs' Defamation Claims**

5

In the District of Columbia, a plaintiff bringing a defamation claim must show:

(1) that the defendant made a false and defamatory statement concerning the plaintiff; (2) that the defendant published the statement without privilege to a third party; (3) that the defendant's fault in publishing the statement amounted to at least negligence; and (4) either that the statement was actionable as a matter of law irrespective of special harm or that its publication caused the plaintiff special harm.

*Beeton v. District of Columbia*, 779 A.2d 918, 923 (D.C. 2001) (quoting *Crowley v. North American Telecomms. Assoc.*, 691 A.2d 1169, 1173 n.2 (D.C. 1997)). In *Tobin v. John Grotta Co.*, 886 A.2d 87 (D.C. 2005), the District of Columbia Court of Appeals upheld a trial court's granting of summary judgement on a defamation claim where, after discovery, the plaintiff was unable to demonstrate the defendant had published the allegedly defamatory statement to a third party without privilege. Because the plaintiff "did not proffer any facts showing that [the defendant] published his statements to third parties," summary judgement was proper after discovery. *Id.* at 90.

The Krakats have not introduced any evidence to substantiate their assertion that Brooks Range published allegedly defamatory statements. (*See, e.g.,* Comp. ¶¶ 39, 49.) On the contrary, discovery has proven claims of publication demonstrably false. The Krakats assert in the complaint that Ms. Farver was present at their termination meetings, where she heard the allegedly false accusations of theft. (Comp. ¶ 19.) However, both Krakats have subsequently and unequivocally admitted that Ms. Farver was, in fact, *not* present for such meetings. (Def.'s Mem. Ex. B., 223; Def.'s Mem. Ex. C, 103.). The complaint further alleges that the defendant published defamatory statements about plaintiffs to "employees of [Brooks Range] and the Home." (Comp. ¶¶ 36, 48.) However, in plaintiffs' responses to defendant's interrogatories, aside from their supervisor (Heffern) and the individual who effected their termination (Mr.

6

Howard Anastasi), the only other employee to whom defendant is alleged to have published the defamatory remarks is Ms. Faver, while she was allegedly present at the termination of the plaintiffs. (*See* Def.'s Mem. Ex. I, ¶ 7.) However, as discussed above, this response is contrary to the deposition testimony of both plaintiffs. The allegation is also contrary to the deposition testimony of Ms. Faver herself, who indicated she was not in the room and could not hear what was going on in the room when either of the Krakats were terminated. (Def.'s Mem. Ex. K, 48, 55-56.) Ms. Faver also indicated that neither Heffern nor Anastasi had indicated to her why the Krakats were terminated (*id.* at 60), that the plaintiffs informed her they had been terminated (*id.* at 53, 56) and that the reason for termination was for allegations of theft (*id.* at 56). Plaintiffs' opposition does not contest defendant's assertion that plaintiffs themselves informed Ms. Faver they were terminated on allegations of theft. (*See* Def.'s Mem. 22.) And, in deposition testimony both Krakats indicate that they are not aware of any third parties to whom allegedly defamatory statements were made. (*See* Def.'s Mem. Ex. B, 233-34; Def.'s Mem. Ex. C, 155-56.)

Likewise, plaintiffs have not produced any evidence to support their allegation that "[d]efendant reduced its false allegations [about plaintiffs] to writing and published those allegations to individuals who worked for both the Home and for [Brooks Range]." (Comp. ¶¶ 39, 50.) In response to defendant's interrogatory asking for substantiation of the claim, plaintiffs essentially repeat the same allegation and reserve the right to supplement during discovery. (Def.'s Mem. Ex. I, ¶ 15.) Discovery is now complete, and no evidence to support this allegation has been identified by plaintiffs.

In its opposition to defendant's motion on this subject, plaintiffs offer only a portion of

the deposition testimony of Ms. Farver, during which Ms. Farver mentions that Mr. Hefern indicated to her, shortly after the Krakats were suspended, that there were allegations of theft against the Krakats which needed to be investigated.  (Pl.'s Opp'n Ex. 3, pp. 25-26.)  However, the full text of the deposition makes clear that this conversation between Farver and Hefern took place *after* Donald Krakat had informed Farver that he had been suspended for allegations of theft.  (*See* Farver Deposition, 33-38.)

Plaintiffs' opposition also references the deposition testimony of Ms. Farver that she received a call from Ms. Sandy Leubkert, a government employee, and that Ms. Leubkert asked Ms. Farver whether Ms. Farver had heard that plaintiffs had been suspended for allegations of theft.  However, plaintiffs have not produced any evidence that would enable a juror to conclude that *the defendant* published defamatory statements to Ms. Leubkert.  And, by this time the plaintiffs had already discussed their termination and reasons therefore with Ms. Farver.

Thus, even after discovery plaintiffs simply do not provide any evidence to enable a reasonable juror to conclude defendant published defamatory remarks about plaintiffs.  Because plaintiff will bear the burden of proving publication at trial and – after extensive discovery – have offered no evidence to support this claim, summary judgement is appropriate with respect to Counts II and IV.

### III    CONCLUSION

A significant portion of plaintiffs arguments to date have centered upon alleged improprieties on the part of Mr. Hefern and Brooks Range, with respect to the manner in which the Home was operated.  And, defendant has allocated significant text to contesting these claims.  Without passing on the validity or evidentiary support provided to support these allegations of

improper or mismanagement of the home, the Court notes simply that the alleged improprieties are not the subject of the instant action.

With discovery complete, it is clear to the Court that plaintiffs cannot meet their burden of proving an essential element of each of their claims.  Accordingly, the defendant's motion for summary judgment will be GRANTED.

A separate order shall issue this day.


Signed by Royce C. Lamberth, Chief Judge, on August 12, 2008.